**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUN 24 P 3 10

CAROL PATTERSON,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

FILED

CIVIL NO.: 04-CV-72152-DT

HON. VICTORIA A. ROBERTS
MAG. JUDGE WALLACE CAPEL, JR.

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment and enter judgment for Defendant.

### II.   REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB] and supplemental security income [SSI]. Plaintiff filed for benefits on February 11, 2002, alleging disability since January 21, 2000, due to "lower chronic back pain, [and] pain in left leg from thigh to toes." (TR 51-54, 63, 189-91). Benefits were denied initially on August 22, 2002. (TR 39-43, 192-96). A de novo hearing was held on January 15, 2004, before Administrative Law Judge [ALJ] Michael F. Wilenkin. (TR 221-58). In a decision dated February 9, 2004, the ALJ found that Plaintiff could perform her past relevant work. (TR 15-21). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied review on April 24, 2004.[1] (TR 4-6). The Plaintiff commenced this action for judicial review.

### A. PLAINTIFF'S TESTIMONY

Plaintiff testified that she was born December 30, 1956. (TR 223-24). She stated that she lived in a three-story home. (TR 224). She stated that her bedroom was upstairs. Id. She reported that her daughter and two grandchildren also lived with her. Id.

Plaintiff explained that she does not drive anymore, per her doctor's orders and that she took the bus to the hearing. Id. She stated that she had not driven in about a year. (TR 225). She stated that her license is currently suspended because she did not pay a ticket. Id.

She stated that she completed the eleventh grade and is proficient in reading and writing. Id. She reported that she completed a course in home health care as well. Id. She stated that she worked previously in the home health care field, but she is not currently working. Id. She stated that her last employment was with Richard's Auto Parts in January 1999, as an auto parts delivery person.[2] (TR 225, 227). She stated that the most she lifted there was fifty pounds. (TR 226). She stated that prior to that she was employed for one year by Pep Boys as a cashier. Id. She stated that she also worked

---

[1] The Appeals Council references the incorrect decision date of October 10, 2001, in its Order. (TR 4). This appears to be a typographical error as the index indicates that the Appeals Council Action is dated April 24, 2004 (it is faintly date-stamped as same), almost two months after the February 9, 2004, decision which is the subject of Plaintiff's June 9, 2004, Complaint. [See Docket Entry No. 1]. Neither party is asserting that the Appeals Council, which references the wrong decision date, is not a final decision of the Commissioner. The Court does note that an earlier hearing was held on August 20, 2001 (TR 197-220); however, Plaintiff makes no reference to the earlier hearing or decision in her Complaint or Motion for Summary Judgement. Therefore, the Appeals Council Order (TR 4-6), will be treated as the final decision regarding the February 9, 2004, decision which is the subject of review here.

[2] The ALJ questioned Plaintiff about earnings of approximately $2,200 in 2002, for which she could not account. (TR 250-51).

2

as a stock and sales person at Handy Andy before that as well as a cashier and stock person at Mervyn's Department Store. Id.

She stated that she stopped working in January 1999, due to an automobile accident in December 1998 that caused back pain.[3] (TR 227). She stated that she was driving a company car at the time of the accident and filed a worker's compensation case. (TR 228). She stated that she only received a $2,500 settlement. Id. She explained that she had pain on her left side, her left leg, and shoulder. (TR 227). She stated that she was on pain pills constantly at that time. Id.

She stated that since her accident her pain has worsened, and sometimes she is unable to get out of bed. (TR 229). She stated that her symptoms include back, leg, and shoulder pain, all on her left side. Id. She explained that she has had these symptoms since her accident first occurred. Id. She explained that her back pain is sharp and goes down below her waist and wraps around her tailbone. (TR 230). She stated that it also goes down into her left leg through her buttocks and into her first four toes. (TR 230, 232). She stated that the pain is always present. (TR 230-31). She later stated that the pain in her left leg comes and goes every day for five to ten minutes at a time. (TR 232-33). She stated that it sometimes happens when she is not active at all and nothing in particular triggers it. (TR 233). She stated that she can no longer do the things that she used to enjoy such as going to the park with her grandchildren because of her pain. (TR 231). She stated that her condition has deteriorated over the years and she is worse now than she was one year ago. Id. She stated that the pain interferes with everything. Id.

---

[3]Plaintiff told the ALJ that her accident was December 28, 1998, and she does not remember the exact date in 1999 that she stopped working. (TR 248). She stated that she did not work a year after her accident or even six months, and that she cannot remember whether she worked in 2000. (TR 248-49). She then stated that she tried to go back to work after her accident, but she was unsuccessful after one week. Id.

3

She reported that she had physical therapy in March 1999, for her symptoms and one session of electrolysis at Sinai Grace within the last three or four years. (TR 233-34). She stated that she did not receive any benefits from either. (TR 234). She stated that when she was in physical therapy she received a booklet for home exercises, but she no longer does the exercises and they did not provide her any real benefit. Id. She stated that she had hot and cold treatments while in physical therapy and continues to use a heating pad at home with some temporary relief. (TR 234-35).

Plaintiff reported that she takes Vicodin twice a day as well as Flexeril and Valium. (TR 235). She stated that she had been taking Vicodin since September of the previous year. Id. She stated that it controls her pain, but makes her drowsy. Id. Plaintiff stated that when she went to Dr. Stisalsa, she had an EMG and was told that she had a ruptured disc and surgery was discussed.[4] Id. She then stated that in January 2002, Dr. Jalopi at Oakwood performed an EMG and stated that she had a ruptured disc. (TR 236-37). She stated that currently there is not any discussions regarding surgery for her back pain. (TR 235). Plaintiff reported that she had an MRI a week prior to the hearing, but she did not have any results with her. (TR 236). She stated that she has blackouts and also had a scan of her head at the time of the MRI. (TR 237). She stated that she was told she had a mild stroke. Id.

Plaintiff also reported that she has high blood pressure that keeps her from working. Id. Plaintiff stated that she is on medication for her high blood pressure, which keeps it under control. (TR 238). She stated that she has cut down on red meat and salt as well. Id. She stated that she does not have recurrent nosebleeds, but she does have recurrent localized headaches and dizziness. Id. She also stated that she is a diabetic and treating with medication for same. (TR 238, 239). She stated that her blood sugar is under control. (TR 239). Plaintiff stated that if it were not for her back, left

---

[4]Plaintiff's attorney indicated that an EMG cannot show a ruptured disc. (TR 235-36).

4

leg, and shoulder pain, she would be working. (TR 240). She stated that she has changed her diet. Id. She reported that she used to weigh three hundred pounds and eat a lot of junk food. Id.

She testified that she does not sleep well at night. Id. She stated that she goes to bed around ten o'clock at night and is up at two o'clock in the morning. Id. She stated that when she wakes up at night she watches television or reads a book. Id. She stated that when she cannot get back to sleep, she sits in a chair and then will get up and move around when she starts to feel stiff. Id.

Plaintiff attributed her sleeping difficulties to depression and stated that it began the previous October and she has been seeing a psychiatrist.[5] (TR 241, 249). She stated that her treatment had not helped, which had included counseling and the following medications: Prozac, Elavil, Celexa, and Mirtazapine. (TR 241-42). She stated that she saw Dr. Zahora at that time, who prescribed the Prozac in October of 2003. (TR 250). She reported that she does not want to be around anyone, does not like communicating with others, and spends a lot of time in her room alone. (TR 242). She stated that she thinks her pain is causing her depression. Id.

Plaintiff reported that her daughter helps her with some of her personal needs. (TR 242-43). For example, her daughter helps her in and out of the bathtub. (TR 243). She stated that she can feed and dress herself. Id. She stated that her daughter does all the cooking and laundry. Id. She stated that she washes the dishes sometimes. Id. She stated that she does not do any shopping herself. (TR 243-44). She stated that the activity which she enjoys most is reading. (TR 244). She stated that she goes to church, but is not involved in any of the related activities. Id.

---

[5]Plaintiff stated that she had never had any medication for a psychological condition before then. (TR 250).

5

Plaintiff stated that she could walk about a half a block before she has to stop due to pain. Id. She stated that three or four years ago she would have been able to walk at least one mile. Id. She stated that she can currently stand for thirty minutes at a time, whereas three or four years ago she estimated that she could stand for a couple hours at a time. (TR 245-46). She stated that she is not currently able to stoop, squat, kneel, crouch, or bend at the waist. (TR 246). She stated that she never could completely do those things, even three or four years ago. Id. She stated that she could never touch her toes. Id. She stated that she has difficulty traversing stairs. Id.

She stated that she does not have any problems using her arms and hands. (TR 247). She stated that she would have difficulty picking up a ten pound bag of flour, but not a five pound bag of sugar. Id. She stated that three or four years ago she would have been able to pick up the ten pound bag of flour, but not a twenty pound bag. Id. She testified that she takes a two and a half hour nap each day, and she was also doing this three or four years ago. (TR 248).

**B.   MEDICAL EVIDENCE**

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[6]

**C.   VOCATIONAL EXPERT'S TESTIMONY**

Elizabeth Pasikowski, a vocational expert [VE], testified at the hearing. (TR 252-56). The VE stated that Plaintiff's past work was as follows: sales clerk, light and unskilled; counter clerk, medium and unskilled; cashier, medium and unskilled; and parts delivery driver, medium and unskilled. (TR 252). The ALJ presented a second hypothetical question to the VE in which a

---

[6] See Subpart E, supra.

6

claimant with Plaintiff's age, education, and work experience assuming her testimony of her limitations was accurate. Id. The VE stated that Plaintiff could not do any of her past relevant work due to the need to nap for two and a half hours at a time daily under the assumptions. (TR 252-53).

The ALJ presented a second hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience, and assuming

> a reasonable interpretation of the credible medical record would allow for a conclusion finding [sic] that such an individual enjoys the residual functional capacity to stand and/or walk six of eight hours of an eight-hour workday, sit two of eight hours in an eight-hour workday, lift as mush as 20 pounds occasionally and as much as 10 pounds frequently. You may assume a history of a complaint of pain and discomfort in the lower back. Vague speculation [INAUDIBLE] not withstanding the precise ideology of this perceived discomfort continues to remain somewhat obscure. While there are a variety of diagnoses bandied about the content of this medical record including but not limited to herniated disc, left peripheral neuropathy, left lumbar sacral radiculopathy, and what have you the precise causative factors and underlying pathology that may otherwise account for the symptoms is not diagnostically established. We do have electromyographic, an electromyographic reading, that suggests the presence of radiculopathy in the area of the fifth lumbar vertebra or nerve root more accurately. Of course that electromyogram suggests the absence of [INAUDIBLE] peripheral neuropathy. So well we know the value of electromyograms in the face of absent other diagnostic studies. Whatever. There's -- obviously there's a certain amount of pain and discomfort involved here the precise cause of which again remains elusive, but I have no doubt that there's a certain amount of pain and discomfort in the lower back and left lower extremity. While it is undoubtedly disconcerting you may assume that this record does not reveal a deficit that would be incompatible with function at the level I suggested. The record reveals the presence of diagnoses of hypertension and non-insulin dependent diabetes recently, apparently recently, discovered. There's no evidence of any end or target organ compromise as a result of these pathologies, and there's no evidence whatsoever that they would serve as a source of noteworthy dysfunction or debility. The record also reveals what appears to be a recent development of some emotional difficulties. There appears to be an element of depression. The precise ideology of that is unclear, but there does seem to be a certain element thereof. There appears to be some tendency to withdraw and isolation and avoidance of people. This at least would suggest if nothing else that any vocational activities undertaken should not contemplate exposure to the public. The record does not reveal any significant cognitive deficit that may be related to either the physiological deficit suffered or the emotional difficulties or the modalities of going to [INAUDIBLE]. She is not

> withstanding these things able to understand, remember, and follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion, respond appropriately to customary work pressures, supervisory personnel, co-workers and the like. Lastly you may assume that the deficit suffered or the modalities employed to treat the same do not now nor have they ever warranted the hypothetical individual lie down during the course of a typical workday.

(TR 253-55). The VE stated that such a claimant could not perform Plaintiff's past relevant work. (TR 255). The VE explained that three of Plaintiff's past jobs were too heavy and the fourth position of sales clerk would require full-time contact with the public, therefore all would be precluded. Id. The ALJ then asked whether there were any other positions available for such a claimant. Id.

The VE identified the following positions: bench assembly, 7,800 positions; inspector, 6,200 positions; and sorter packer, 5,900 positions. Id. The VE stated that the numbers would be doubled for the metropolitan area. Id. The ALJ then added a third hypothetical, assuming

> only the following changes, and [the ability] to sit six of eight hours of an eight-hour workday, stand or walk two of eight hours of an eight-hour workday, lift not more than ten pounds occasionally and lesser weights perhaps as much as five pounds frequently. The balance of the equation is as I otherwise gave it to you remaining the same. How would that affect your answer?

(TR 256). The VE identified the following similar positions: bench assembly, 4,500 positions; inspector, 3,600 positions; and sorter packer, 4,000 positions. Id. The VE stated that the numbers again would be doubled for the metropolitan area. Id.

### D.  ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that claimant has "degenerative lumbosacral disc disease with a left radiculopathy, recurrent major depression, and a dependent personality disorder." (TR 16, 20). However, the ALJ found that she does not have an impairment either alone or in combination,

8

sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. Id. The ALJ found Plaintiff not to be fully credible. (TR 18, 20). Thus, he determined that Plaintiff had the residual functional capacity [RFC] to perform a significant number of unskilled light jobs. (TR 19-20, 21). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 20-21).

### E. ANALYSIS

Plaintiff advances several claims in her Motion for Summary Judgment. Her Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ erred in assessing Plaintiff's credibility; and (2) the ALJ also erred in forming a hypothetical question that did not accurately portray Plaintiff's limitation, and thus, improperly relied on the subsequent testimony of the VE. [7] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[8]

#### 1. Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

---

[7] Plaintiff's Motion for Summary Judgment and Brief filed September 1, 2004 (hereinafter "Plaintiff's Brief"), at pages 9-15.

[8] Defendant's Motion for Summary Judgment and Brief filed October 25, 2004 (hereinafter "Defendant's Brief"), at pages 6-9.

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Credibility

Plaintiff challenges the ALJ's credibility finding regarding the objective evidence and her daily activities.[9] In order to determine disability based on subjective complaints and limitations, there must be a two prong analysis.

> [T]he court explained this standard: "In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986)).

When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:

---

[9]Plaintiff's Brief at pages 9-11.

10

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Ridge v. Barnhart, 232 F.Supp.2d 775, 790-91 (N.D. Ohio 2002). Although "[c]redibility determinations rest with the ALJ,"[10] "[i]f an ALJ rejects a claimant"s testimony as incredible, he must clearly state his reasons for doing so." See Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir.1987); Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). In addition, "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984). Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir.1985). As Social Security Ruling [SSR] 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich., Aug. 3, 2004) (slip copy).

---

[10] See Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). Price v. Comm'r of Soc. Sec., 234 F.3d 1269, 2000 WL 1648129, *2 (6th Cir. 2000) (unpublished disposition; Table).

Plaintiff specifically challenges that the ALJ found her daily activities inconsistent with debilitating depression and anxiety.[11] Plaintiff further alleges that she stated that she likes reading, which the ALJ noted, but that she did not indicate the time she spent doing same.[12] Further, she stated that although she goes to church, she does not participate in any activities or organizations.[13]

She stated that it is unknown where the ALJ found his language regarding Plaintiff's reported ability to get along well with others and that she surrounds herself with support.[14] However, as Defendant points out, it was clearly stated in an October 2003, Intake Assessment Form.[15] (TR 176). Plaintiff argues that this is inconsistent with Plaintiff's daughter's reports that she is grouchy and does not like being around people, rather she is mean to others and uses profanity all the time.[16] Plaintiff's daughter's report was in March 2002. (TR 89). However, Plaintiff does acknowledge that she started treating with a psychiatrist in October 2003, but stated at the hearing that she does not like to be around others and spends time alone in her room.[17] (TR 242).

Plaintiff's progress notes are somewhat illegible, but does not appear to indicate that she told her therapist that she was spending time alone and avoiding others; rather, the one typed entry indicates that Plaintiff was unable to attend her session because her friend was not there to provide

---

[11] Plaintiff's Brief at page 10.

[12] Plaintiff's Brief at page 10.

[13] Id.

[14] Id.

[15] "Ct [sic] states that she had suicidal thoughts on 10/22/03, but that she is feeling better now, works hard to surround herself with family members to help keep her mood lifted." (TR 176).

[16] Plaintiff's Brief at pages 10-11.

[17] Plaintiff's Brief at page 11.

her transportation. (TR 180-83). The treatment note states that Plaintiff's friend eventually showed up to her home, but her session was almost over. (TR 182). Plaintiff's friendship would appear to contradict her allegations of social avoidance. Nonetheless, the ALJ gave Plaintiff the benefit of including the "tendency to withdraw and isolation and avoidance of people," in his hypothetical to the VE. (TR 254).

Plaintiff fails to establish which portions of the objective medical evidence the ALJ disregarded relating to her back pain, depression, and anxiety.[18] She simply reiterates the ALJ's findings.[19] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . .put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Nonetheless, although the ALJ did not doubt that Plaintiff had pain,[20] he stated at the hearing that the precise cause was elusive. Sections 404.1528 and 404.1529 of Social Security Regulations No. 4 clearly establish that there must be medical evidence to support a complaint of disabling pain. Mullen v. Bowen, 800 F.2d 535, 547 (6th Cir. 1986). See also Crouch v. Sec'y of Health & Human Servs., 909 F.2d 852, 856 (6th Cir. 1990).

The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citation omitted).

---

[18] Plaintiff's Brief at page 9.

[19] Plaintiff's Brief at page 10.

[20] It is noted that Plaintiff reported back pain at the hearing since her automobile accident in 1998, (TR 229), but her medical records do not reflect treatment until December 2001. (TR 138). Further, Plaintiff reported inability to squat presently as well as difficulty even prior to her accident; however, on April 23, 2002, a consultative examiner indicated that "squatting and recovering from squatting, are done well." (TR 158).

> The ALJ may have been wrong, but he was not unclear; after listening to what [Plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).

The ALJ examined Plaintiff's daily activities, her medical records, and her testimony. (TR 18-19). He stated his reasons regarding same in assessing her credibility. Id. Thus, the ALJ's decision was based on substantial evidence and this Court cannot challenge that finding. Williamson v. Sec'y of Health and Human Servs., 796 F.2d 146, 150 (6th Cir. 1986) ("The ALJ expressly found Williamson's testimony not worthy of credit, and such credibility determinations ordinarily are given deference by the court.").

### b. Hypothetical

Next, Plaintiff alleges that the ALJ failed to accurately form a hypothetical that includes limitations from Plaintiff's Mental RFC and Psychiatric Review Technique Form (PRTF).[21] Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004).

It is recognized that an ALJ may rely on the testimony of a VE at the fifth step of the disability analysis to establish if a significant number of jobs are available for a person with

---

[21] Plaintiff's Brief at pages 12-13.

claimant's limitations. See Felisky, 35 F.3d at 1035-36. The only requirement is that the testimony be "given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant aspects." Id. at 1036.

Plaintiff specifically argues that the moderately limited activities described on pages 112-13, (the Mental RFC), of the transcript where not included in the hypothetical.[22] These include a moderately limited ability to

> "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;"
> "interact appropriately with the general public;" and
> "accept instructions and respond appropriately to criticism from supervisors."

(TR 112-13). However, the ALJ accommodated Plaintiff's limitations in his hypothetical by stating, as Defendant points out, she should not have "more than limited contact with the public, co-workers, or supervisors."[23] (TR 18, 19, 254). Further, as Defendant points out,[24] the same Mental RFC indicates that she was "not significantly limited" in her ability to:

> "remember locations and work-like procedures;"
> understand and remember both very short and simple as well as detailed instructions;
> carry out both short and simple and detailed instructions;
> "maintain attention and concentration for extended periods;"
> "sustain an ordinary routine without special supervision;"
> "work in coordination with or proximity to others without being distracted by them;"
> "make simple work-related decisions;"
> "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;"
> "ask simple questions or request assistance;"

---

[22] Plaintiff's Brief at pages 13-14.

[23] Defendant's Brief at page 13.

[24] Defendant's Brief at pages 12-13.

"get along with coworkers or peers without distracting them or exhibiting behavioral extremes;"

"maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."

(TR 112-13). In fact, the physician completing the Mental RFC concluded that "claimant appears to be able to do simple tasks in [sic] a regular basis at this point." (TR 114). The ALJ likewise concluded Plaintiff was capable of a significant number of unskilled, light jobs. (TR 20, 21).

Additionally, Plaintiff argues that the VE originally responded that she was precluded from working when asked to assume Plaintiff's own description of her limitations.[25] However, as in Walton v. Comm'r of Soc. Sec., 60 Fed.Appx. 603, 611, 2003 WL 1875559, *9 (6th Cir. 2003),

> [t]he ALJ was not obligated to rely on the VE's testimony that was given in response to a hypothetical question that was based on Plaintiff's credibility. Rather, the ALJ properly relied on the VE's response to a hypothetical question that was based on the limitations that were credited by the ALJ and *supported* by substantial evidence on the record. See Blacha, 927 F.2d at 231.

Further, the VE does not decide disability; rather, as in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

Therefore, the ALJ's hypothetical question to the VE was based on substantial evidence and his reliance on the VE's testimony regarding same was not in error.

---

[25]Plaintiff's Brief at page 13.

### III. CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

Dated: **JUN 2 4 2005**

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

## CERTIFICATION OF SERVICE

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUN 24 P 3 10

**UNITED STATES OF AMERICA** )
) ss  Case No.: 04-CV-72152-DT
**EASTERN DISTRICT OF MICHIGAN** )

FILED

I, the undersigned, hereby certify that I have on the 24th day of June 2005, mailed a copy of the "Report and Recommendation," in the foregoing cause, pursuant to Rule 77(Davenport), Fed.R.Civ.P., to the following:

Honorable Victoria A. Roberts
United States District Judge
231 W. Lafayette, Room 123
Detroit, Michigan 48226

James A. Brunson
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708

Kenneth F. Laritz
15501 Metropolitan Parkway
Suite 100
Clinton Twp., Michigan 48036-1684

Social Security Administration
Office of the Regional Counsel
200 W. Adams Street, 30th Floor
Chicago, Illinois 60606

Marsha Heinonen
Deputy Clerk