UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL PATTERSON,

    Plaintiff,

vs                                             Case No: 04-72152
                                                  Honorable Victoria A. Roberts

COMMISSION OF SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER ADOPTING
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge Wallace Capel, Jr. recommends that the Court **GRANT** Defendant's motion and **DENY** Plaintiff's motion. The Court **ADOPTS** the Magistrate's recommendation.

### II. PROCEDURAL HISTORY AND FACTS

Except for the errors identified below, Magistrate Capel adequately summarizes the relevant facts and procedural history and that summary is incorporated herein.

### III. STANDARD OF REVIEW

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the ALJ's decision to determine

1

whether it is supported by "substantial evidence." "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, nor make credibility determinations. *Id.*

**IV.    ARGUMENTS**

There are five factors that the Social Security Administration uses to determine eligibility for benefits. Plaintiff has the burden on the first four and must establish that: 1) he is not presently engaged in gainful employment; and 2) she suffered from a severe impairment; and 3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; or 4) she did not have the "residual functional capacity" ("RFC") to perform past work. *Jones v Comm'r of Soc. Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If the Plaintiff satisfies her burden, the burden shifts to the Commissioner for the fifth factor to show that there is other work available in the economy that the claimant can perform. 20 C.F.R. §§404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of vocational expert testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. Id.

### A. Plaintiff's claim

Plaintiff Carol Patterson's last employment was as an auto parts delivery person in January 1999. She alleges that she has been disabled since January 21, 2000, due to chronic pain in her lower back, left shoulder and left leg from her thigh to her toes. Plaintiff's ailments are allegedly the result of an auto accident in December 1998, which occurred while Plaintiff was driving a company vehicle.

### B. ALJ's Decision

Administrative Law Judge ("ALJ") Michael F. Wilenkin denied Plaintiff's application for disability insurance benefits and supplemental security income because he found that Plaintiff has the "residual functional capacity to perform the exertional and nonexertional requirements of unskilled light work offering limited contact with the public, co-workers, and supervisors."[1] Tr. at p. 20. In his analysis, the ALJ indicated that he did not find Plaintiff's claims of disabling chronic and severe low back pain, left

---

[1] The Magistrate erroneously states that the ALJ denied Plaintiff's claim because he found that she could perform her past relevant work. R&R at p. 1.

radicular pain, and severe recurrent depression and anxiety credible, because the claims were not supported by objective medical evidence or her reported activities of daily living.  He also noted that, although Plaintiff's accident occurred in 1998, there are no medical records before December 2001.

The ALJ based his finding -- that there are a number of light unskilled jobs in the economy that Plaintiff can perform -- on a lengthy hypothetical that he posed to the Vocational Expert ("VE").  He asked the VE to advise as to the number of jobs for an individual: 1) with the RFC to stand and/or walk six hours and sit two hours in an eight hour work day; 2) lift up to 20 pounds occasionally and 10 pounds frequently; 3) with a history of complaints of low back and radicular pain, but diagnostic and clinical evidence that only suggests left radiculopathy at L-5; 4) diagnosed with hypertension and Type II diabetes, with no evidence of organ damage or dysfunction related to the diagnoses; 5) diagnosed with depression; 6) who is prone to withdrawal, isolation, and avoidance of people; 7) who is not exposed to the public; 8) who has no significant cognitive deficits; 9) who retains the ability to: understand, remember and follow instructions; follow through and complete tasks in a timely and appropriate fashion; and, respond appropriately to customary work pressures, supervisory personnel and co-workers;[2] and 10) who is not required to lie down during a typical work day.  Tr. at pp. 253-255.  In the local area, the VE testified that such an individual could perform 7,880 unskilled light positions in assembly, 6,200 unskilled light positions in visual inspection, and 5,900

---

[2]In his decision, the ALJ mistakenly asserts that the hypothetical included someone who might require limited contact with the public, coworkers or supervisors. Tr. at p. 19.  In fact, it only limited contact with the public.

4

positions in sorting and packing.

The ALJ modified the hypothetical to an individual who can sit six hours, stand for two hours, and lift not more than ten pounds occasionally and up to five pounds frequently. With these adjustments, in the national and regional economy, the VE identified approximately 4,500 unskilled sedentary positions in assembly, 3,600 unskilled sedentary positions in visual inspection, and 4,000 sorting and packing positions.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff filed this action to dispute the ALJ's decision. She filed a Motion for Summary Judgment in which she asserted that the ALJ's decision was not based on substantial evidence because he erred in his assessment of her credibility and the extent to which her reported daily activities were consistent with her claims. She specifically challenged the ALJ's assertion that she reported that: 1) she gets along well with others and surrounds herself with family to keep her spirits up; 2) and, that she enjoys reading and regularly attends church services. Plaintiff argued that the record shows the opposite regarding her interaction with others. Further, she says that she did not specify how long or how often she is able to read, and she testified that she is not active in the church beyond attending services.

Plaintiff's second claim of error was that the hypothetical posed to the VE did not accurately portray Plaintiff's limitations due to depression. She argues that the ALJ's finding that she did not have any significant cognitive deficit and that she could "understand, remember and follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion, [and] respond appropriately to

5

customary work pressures, supervisory personnel, and co-workers" is contrary to her Mental RFC Assessment. Tr. at p. 255. Plaintiff pointed out that, in the Mental RFC Assessment, the examiner determined that Plaintiff has a moderately limited ability to: "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "interact appropriately with the general public;" and "accept instructions and respond appropriately to criticism from supervisors." Tr. at pp. 112-113.

### D. Magistrate's Recommendation

With regard to the credibility assessment, the Magistrate found that there is sufficient support in the record for the ALJ's finding that Plaintiff's daily activities are inconsistent with her claim of debilitating depression and anxiety. Specifically, in October 2003, Plaintiff's therapist, Lisa M. King, M.S.W., C.S.W., reported that Plaintiff said that she works hard to surround herself with family in order to lift her moods. Tr. at p. 176. Although this assertion is inconsistent with Plaintiff's testimony at the administrative hearing and her daughter's statements regarding Plaintiff in the Daily Activities report (Tr. at pp. 84-89), the Magistrate notes that Plaintiff's daughter made her statements in March 2002, well over one year before Plaintiff began treating with the therapist in October 2003. Also, the Magistrate notes that the therapist's treating notes do not indicate that Plaintiff ever said that she avoided others. Tr. at pp. 180-183. However, the notes do indicate that Plaintiff was unable to attend one session because the friend that she relied upon to take her did not show up. This friendship, says the Magistrate, appears to contradict Plaintiff's claim of social avoidance. In any event, the Magistrate contends that the ALJ gave Plaintiff the benefit of doubt by including a

"tendency to withdraw and isolation and avoidance of people" in his hypothetical.

Next, the Magistrate asserts that Plaintiff failed to adequately articulate her claim that the ALJ disregarded certain objective medical evidence in assessing the credibility of Plaintiff's claim of debilitating pain. Rather, the Magistrate says Plaintiff simply reiterated the ALJ's findings without offering argument and analysis. Nevertheless, the Magistrate states that the ALJ did not dispute Plaintiff's claim of pain; he only stated that it was elusive. The Magistrate points out that the Social Security Administration Regulations, 20 C.F.R. §§ 404.1528 and 404.1529, require that there be medical evidence to support claims of disabling pain. Because the Court must give great weight and deference to an ALJ' credibility finding and the Magistrate believes that the ALJ adequately articulated his reasons for his assessment of Plaintiff's credibility with regard to the extent of her physical and mental limitations. the Magistrate finds that the ALJ's decision was based on substantial evidence.

The Magistrate also found, contrary to Plaintiff's claim, that the ALJ's hypothetical adequately addressed her limitations. The Magistrate says that the ALJ addressed the moderate limitations described in the Mental RFC Assessment by stating that there should only be limited contact with the public, co-workers, or supervisors.[3] The

---

[3]As stated, the ALJ actually said that there should be no contact with the public, but he did not limit contact with co-workers or supervisors:

> There appears to be some tendency to withdraw and isolation and avoidance of people. This at least would suggest if nothing else that any vocational activities undertaken should not contemplate exposure to the public.

Tr. at p. 254.

7

Magistrate further points out that the Mental RFC Assessment provides that Plaintiff is not significantly limited in numerous other areas of "understanding and memory," "sustained concentration and persistence," and "social interaction." *See* Tr. at pp. 112-113. And, the examiner stated that Plaintiff appears to be able to do simple tasks on a regular basis,[4] which the Magistrate suggests supports the ALJ's finding that Plaintiff is capable of performing a number of unskilled, light jobs. Lastly, the Magistrate states that the ALJ was not obligated to accept that portion of the VE's testimony that was based solely on Plaintiff's description of her limitation. Rather, he was entitled to rely upon the limitations he found credible. Like the credibility assessment, the Magistrate recommends that the Court find that the ALJ's hypothetical was based on substantial evidence.

### E. PLAINTIFF'S OBJECTIONS

Plaintiff objects on several grounds. First, in addition to those errors already noted, Plaintiff points out other factual errors in the Magistrate's R&R. For instance, the Magistrate asserts that Plaintiff's attorney stated that an EMG cannot show a ruptured disc. R&R at p. 4 n.4. In fact, Plaintiff was represented by a lay representative, not an attorney. And, the statement attributed to the representative was actually made by the ALJ. Tr. at p. 235. The Magistrate also erroneously stated that Plaintiff lives in a three-story home, although Plaintiff testified that she lives in a two-story home. Tr. at p. 224.

Second, Plaintiff objects to the Magistrate's finding that there was support for the

---

[4]The examiner's handwriting actually is not entirely legible and is peppered with apparent shorthand. However, the parties agree with the Magistrate's interpretation of the examiner's notes.

ALJ's finding that there is no objective medical evidence to support her claimed physical limitations.[5]  On the contrary, Plaintiff asserts that the objective evidence includes her abnormal EMG, the muscle spasms observed by her physical therapist, and the reported positive straight (left) leg raising.

Third, presumably in objection to the Magistrate's finding that there is support for the ALJ's assertion that Plaintiff's claimed limitations are not consistent with her reported daily living activities, Plaintiff asserts that the record shows that she is very limited in her daily activities.  Specifically, Plaintiff points out that: 1) the consultative psychiatrist, A. Kumar, M.D., noted that she did not get along with her family and needed help with her hygiene; 2) another doctor[6] indicated that she requires assistance with meal preparation, shopping, laundry and housework; 3) her daughter reported in March 2002 that Plaintiff: sits or lies down during the day; is very uncomfortable at night; is grouchy and does not like to be around a lot of people; frequently uses profanity; does not participate in activities with her family; does not get along with anyone due to her pain; stays to herself; and, needs help cooking and cleaning the house; 4) in March 2002, Plaintiff reported in her activities questionnaire that: she needs assistance dressing; she has problems sleeping; she does not want to be around anyone; her daughter helps her get in and out of the bathtub; and, her daughter does the household chores, including laundry, cooking and cleaning; and 5) Plaintiff testified that she does

---

[5] The Court presumes that this is Plaintiff's objection.  It is not entirely clear, because she simply restates the ALJ's finding and then lists what she asserts is objective evidence.

[6] The physician's full name is not legible and it is not clear whether she is a treating physician.  *See* Tr. at p. 175.

9

not shop.

Fourth, Plaintiff argues that, contrary to the Magistrate's finding, the hypothetical did not adequately accommodate her limitations. She asserts that limiting contact with the public, co-workers and supervisors did not sufficiently address her limited ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and accept instructions. And, although the examiner stated in the Mental RFC Assessment that she appears to be able to do simple tasks on a regular basis, Plaintiff argues that the examiner did not have the expertise to render a vocational opinion. Rather, she asserts that the VE should have been told of the limitations indicated in the Assessment so that she (the VE) could render an opinion regarding whether the limitations allow Plaintiff to perform simple tasks on a regular basis. Plaintiff additionally asserts that the hypothetical is inconsistent with the Mental RFC Assessment and the ALJ's finding regarding her RFC.

Lastly, Plaintiff apparently disputes the Magistrate's finding that there was substantial evidence to support the ALJ's ruling regarding her claims of debilitating depression and anxiety. Without making a specific argument, Plaintiff refers to various parts of the record regarding her mental health. Dr. Kumar, the consultative psychiatrist, noted that Plaintiff looked isolated, withdrawn and depressed; there were signs of psychomotor inhibition; she cried during the interview; she had poor self-esteem with feelings of helplessness; she had no energy and expressed vague suicidal feelings; she had poor sleep; and, her affect was flat and her mood was depressed and anxious. Based on these symptoms, the examiner reported Plaintiff's prognosis to be guarded and diagnosed Plaintiff with severe recurrent major depression and dependent

personality disorder.

Plaintiff also points out that she began treatment for depression with therapist King in October 2003 and presented with many of the same symptoms found during the consultative psychiatric evaluation and others. See Tr. at p. 176. Ms. King's primary diagnosis is post-traumatic stress disorder, relative to Plaintiff's fear of driving due to the auto accident. Her secondary diagnosis is dysthymia.[7]

### F.     DEFENDANT'S RESPONSE

Defendant first asserts that the Magistrate's misstatement regarding the basis of the ALJ's denial was obviously inadvertent and the remaining factual errors were not material to his ultimate finding.

Turning to Plaintiff's substantive objections, Defendant argues that the evidence Plaintiff refers to as objective medical evidence in support of her claimed physical limitations was not ignored by the ALJ. In fact, Defendant says that the ALJ agreed that Plaintiff has a degenerative disc disease with left radiculopathy. But, in making his ultimate finding, Defendant says the ALJ relied on records from Plaintiff's treating and examining physicians, who reported that she had no significant neurological or other abnormalities as a result of the mild degenerative disc disease and mild left radiculopathy. They also reported intact reflex and sensory findings. Neurologist Jose U. DeSousa, M.D., reported mild left side weakness with inconsistent findings. An emergency room doctor reported 4/5 motor strength in the left leg, but otherwise normal motor findings. The remaining doctors reported normal muscle strength. Over a three

---

[7]"Dysthymia" is defined in *Stedman's Medical Dictionary* 434 (23rd ed., Williams and Wilkins Co. 1976), as "[a]ny mental disorder or disease."

month period, Dr. Fady Fayad made positive findings on straight leg raising and muscle spasms, but does not record reflex, sensory or motor findings. Based on this evidence, Defendant asserts that the ALJ could have determined that the objective evidence undermined Plaintiff's claim of disabling pain and limitation.

Defendant contends that the Magistrate properly concluded that the ALJ reasonably considered Plaintiff's activities and other information in the record as a whole in his evaluation of her daily activities. For instance, although Plaintiff testified that she stopped working in January 2000 due to pain, the record shows that she actually worked for a home healthcare provider and had a least two quarters of coverage in 2002.

Although Plaintiff disputes the ALJ's finding regarding her social interaction, Defendant says that she does so based on some of her own subjective statements. Moreover, contrary to Plaintiff's claim of social isolation, Plaintiff told her treating doctor in October 2003 that she was feeling better (mentally) and worked hard to surround herself with family members. Plaintiff also testified that she would not be depressed if she did not have physical pain. Defendant contends that this indicates that Plaintiff does not have a limitation directly resulting from her depression.

In assessing Plaintiff's credibility, Defendant says the ALJ appropriately considered the fact that there are no medical records for several years after the accident. Also, after June 2002, there are no further treatment records that indicate that Plaintiff's back or leg pain was at a level that required further treatment. Defendant argues that the Magistrate correctly concluded that the ALJ considered appropriate factors in evaluating Plaintiff's credibility and sufficiently explained his rationale.

With regard to Plaintiff's claim that the hypothetical that the ALJ relied upon was inadequate, Defendant points out that the examiner who completed the Mental RFC Assessment only found that Plaintiff had limitations in three out of twenty areas of mental functioning, that she had no major problems with social and adaptive skills, and that she was able to do simple tasks on a regular basis.

Plaintiff asserts that the Mental RFC examiner was not qualified to render a vocational opinion. Defendant argues, however, that the examiner did not render a vocational opinion. He rendered a Mental RFC assessment, as he was entitled to do. Additionally, Defendant argues that the assessment was consistent with the ALJ's RFC determination. And, per Defendant, the ALJ accommodated Plaintiff's moderate limitations by restricting Plaintiff to unskilled work that did not require more than limited contact with the public, co-workers or supervisors.

**V.    ANALYSIS**

As a preliminary matter, the factual errors in the Magistrate's R&R are noted and corrected here. The most significant error was the Magistrate's initial misstatement that the ALJ found that Plaintiff could perform past relevant work. However, the balance of the Magistrate's recommendation is based on the ALJ's actual finding. Therefore, the Court finds that none of the Magistrate's factual errors is material to the Recommendation.

Turning to the substantive issues, Plaintiff objects to the Magistrate's recommendation on three grounds: 1) the ALJ erred in finding that her "allegations of disabling symptoms of chronic and severe low back and left radicular pain and severe recurrent depression and anxiety are not wholly credible because they are not

13

supported by the objective clinical evidence or the claimant's reported activities of daily living" (Tr. at 18); 2) the ALJ's hypothetical was defective and incomplete because it did not include the moderate limitations identified by the examiner in the Mental RFC assessment; and 3) the ALJ's hypothetical included characteristics that are inconsistent with the Mental RFC Assessment.

### A. CREDIBILITY ASSESSMENT

The ALJ stated that he did not find Plaintiff's claims regarding the extent of her physical limitations credible due to a lack of sufficient objective evidence. He also noted that there are no medical records from the date of the accident in 1998 until December 2001. Plaintiff contends that her abnormal EMG, the muscle spasms observed by her physical therapist, and positive straight leg raising on the left is objective evidence that supports her claims.

There was an abnormal EMG on January 30, 2002, which showed a left L-5 radiculopathy. Tr. at 154. The ALJ acknowledged the abnormal EMG results, but stated that the results only indicate mild degenerative disc disease and a mild left radiculopathy, but that the clinical evidence is otherwise equivocal.[8] The ALJ specifically asserted that "[c]onsultative and treating physicians have noted that the claimant has presented with a normal posture and gait, negative straight leg raising test, no signs of muscle spasm or atrophy, and no signs of any neurological deficits." Tr. at

---

[8]Note that electromyographer S. Jolly, M.D., appears to indicate that the left radiculopathy is acute: "There is electrodiagnostic evidence of left L-5 acute on chronic-radiculopathy affecting the left lower [extremity]." Tr. at p. 154. However, Plaintiff does not dispute the ALJ's characterization of the results as "mild" in either her Motion for Summary Judgment or Objections. Therefore, it is presumed that the EMG results indeed indicate only a "mild" radiculopathy.

p. 8.  There is support for this finding.

During Plaintiff's first visit to the emergency room on December 7, 2001, Plaintiff had a normal range of motion in her lower extremities.  Tr. at p. 138-139.  On her second visit on January 2, 2002, Plaintiff appeared with a normal gait and 4/5 functional strength in her left lower extremity.  Tr. at p. 146.  Plaintiff correctly points out that the emergency room physician did note some muscle spasm in her lower back.  However, a few months later on April 23, 2002, state examiner Cynthia Shelby Lane, M.D., reported no muscle spasm.  Tr. at p. 158.  Plaintiff's treating physician, Fady Fayad, M.D., listed muscle spasms in a Disability Certificate dated June 25, 2002.  Tr. at 163.  However, the supporting medical record is illegible.  Tr. at p. 162.  In May and June of 2002, Dr. Fayad noted positive straight leg raising tests,[9] whereas Dr. Lane indicated in April 2002 that the straight leg raising test was negative.  Tr. at pp. 158, 165, 168.

When evaluating complaints of pain, an ALJ may consider the credibility of the claimant, because "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Houston v Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984).  *See also Walters v Comm'r of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997).  When supported by substantial evidence, such credibility determinations are accorded great weight and deference.  *Howard v Comm'r of Social Security*, 276 F.3d 235, 242 (6th Cir. 2002); *Walters,* 127 F.3d at 531.

---

[9]Although Dr. Fayad's records are largely illegible and heavily laden with shorthand denotations, Defendant does not dispute that they indicate positive straight leg raising tests.

15

An individual's subjective complaints of pain or other symptoms are not alone sufficient to establish that she is disabled. *Walters*, 127 F.3d at 531 (*quoting* 20 C.F.R. §404.1529(a)). Rather, assertions of disabling pain are evaluated under a two-pronged test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v Secretary of HHS,* 801 F.2d 847, 853 (6th Cir. 1986). *See also Walters,* 127 F.3d at 531. In this case, the evidence that Plaintiff refers to indicates that she has a mild left radiculopathy, periodic muscle spasms, and that she has had positive straight leg raising tests. However, none of the examining physicians describes Plaintiff's condition in terms that suggest that it is severe or disabling to the extent Plaintiff claims. Moreover, there is evidence that Plaintiff : 1) has no neurological deficits; 2) on at least one occasion, had no muscle spasms and a negative straight leg raising test; 3) continued to work for some period of time between July 20, 2001 and September 22, 2002 (Tr. at p. 101); and 4) does not have any evidence that she sought treatment during the three years after the accident that caused the injury. In light of all of these factors, the Court finds that there is substantial evidence to support the ALJ's credibility assessment regarding to the extent of Plaintiff's physical limitations.

With regard to her psychological state, the ALJ discounted Plaintiff's claim that she suffers from debilitating depression and anxiety because he found that:

> The claimant has reported that she gets along well with others and surrounds herself with family members to help keep her spirits up.

16

> She stated that she enjoys reading and regularly attends church services. There is no indication that she withdraws from social contact and she routinely has friends driver her to her appointments.

Tr. at p. 19. Plaintiff contends that many of the ALJ's findings are factually incorrect and inconsistent with her and her daughter's written statements regarding her daily activities and Plaintiff's testimony about the same.

The only finding that is not supported by the record is the ALJ's assertion that Plaintiff reported that she gets along well with others. The ALJ does not cite the specific page in the record where this is reported and I did not find any such statement. However, the balance of the ALJ's findings are stated in the record. *See* Tr. at 176, 182, 242-244. Also, although Plaintiff's daughter reported that Plaintiff avoids socializing, her statement was given on March 26, 2002, over one year prior to Plaintiff's report to the contrary in October 2003. In any event, the ALJ credited Plaintiff's claimed social isolation by including in the hypothetical the limitation that the hypothetical individual is prone to withdrawal, isolation and avoidance of others. Tr. at p. 254. For these reasons, there is substantial evidence to support the ALJ's credibility finding regarding Plaintiff's psychological limitations.

### B.   ADEQUACY OF HYPOTHETICAL

Plaintiff's second and third claims of error are that the ALJ did not include all of the state examiner's findings in the Mental RFC Assessment in his hypothetical, and that the hypothetical included characteristics that are inconsistent with the ALJ's RFC finding. A hypothetical that an ALJ seeks to rely upon is valid if it fairly takes into account a claimant's limitations. *Varley*, 820 F.2d at 780. For the reasons stated below, the Court finds that Plaintiff's limitations were adequately incorporated into the

hypothetical.

In a section of the Mental RFC Assessment entitled "Summary Conclusions," the examiner is asked to evaluate the claimant in four areas (i.e., "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation") and rate the degree of the claimant's limitation (i.e., not significantly limited, moderately limited or markedly limited).  Each area lists a number of sub-categories.  In all, there are twenty sub-categories that the examiner must rate.  At the end of the report in a section entitled "Functional Capacity Assessment," the examiner is asked to explain the summary conclusions in narrative form.  The examiner is to include any information that clarifies a limitation or function.

The examiner in this case, Zahra Khademian, M.D., noted a total of three sub-categories within the "sustained concentration and persistence" and "social interaction" areas in which Plaintiff is moderately limited.  Plaintiff contends that the ALJ's hypothetical was incomplete because he failed to incorporate two of the limitations found by Dr. Khademian:  1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and 2) the ability to accept instructions from supervisors.[10]  Tr. at 112-113.  The ALJ instead asked the VE to consider a person who, *inter alia*, is "able to understand, remember, and follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion, and respond appropriately to customary work pressures,

---

[10]The examiner also found that Plaintiff was moderately limited in the ability to interact appropriately with the general public, and in her ability respond appropriately to criticism from supervisors.  Tr. at p. 113.  However, Plaintiff does not base her objections on these findings.

18

supervisory personnel, co-workers and the like." Tr. at p. 255. Plaintiff asserts that these characteristics are inconsistent with both her Mental RFC Assessment and the ALJ's own finding that Plaintiff "retains the [RFC] to perform the exertional and nonexertional requirements of simple unskilled light work offering limited contact with the public, co-workers and supervisors." Tr. at 20.

An ALJ's hypothetical need only reference all of a claimant's limitations. *Webb v Comm'r of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). Here, although Dr. Khademian indicated in the summary conclusions that Plaintiff was moderately limited in the areas at issue, she further qualified those findings by stating in the narrative that Plaintiff is "able to understand [and] follow [illegible] instruction and procedure" and that she has "no major problem with social [and]/or adaptive skills." Tr. at 114. Moreover, in the summary conclusions, Dr. Khademian indicated that Plaintiff is not significantly limited in her ability to: 1) understand and remember simple and detailed instructions; 2) carry out simple and detailed instructions; 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 4) ask simple questions or request assistance; or 5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

"Substantiality of evidence must be based on the record taken as a whole." *Garner v Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). Considering Dr. Khademian's findings in their entirety, the Court finds that the ALJ's hypothetical fairly takes the limitations noted by Dr. Khademian into account and that there is substantial evidence for the ALJ's finding that Plaintiff is "able to understand, remember, and follow

instructions, follow through with and complete assigned tasks in a timely and appropriate fashion, and respond appropriately to customary work pressures, supervisory personnel, co-workers and the like." Tr. at p. 255.

## VI.   CONCLUSION

The Court **ADOPTS** the Magistrate's recommendation, **GRANT** Defendant's motion, and **DENIES** Plaintiff's motion.  Judgment will enter for Defendant.

**IT IS SO ORDERED.**


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 28, 2005

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2005.
>
> s/Linda Vertriest
> Deputy Clerk